UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK E. DOTTORE, RECEIVER, | ) | CASE NO.1:04CV2153 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| FORTRAN PRINTING, INC., ET AL., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Receiver's Motion to Pay Creditors in Priority as Their Interests Appear (ECF Dkt# 40). This Order encompasses all outstanding fee applications, disputes over the remaining funds in the receivership and priority contests. For the following reasons, the Court grants in part, and denies in part, Receiver's Motion.

On February 13, 2006, the Receiver filed an affidavit attesting there was Six Hundred Fifty-Three Thousand Three Hundred Eighteen dollars ($653,318.00) cash and Two Hundred Seventy-Six Thousand Seven Hundred Fifty dollars ($276,750.00) in accounts receivable remaining in the Receivership.

The Court will address two threshold issues prior to discussing parceling the remaining funds in the receivership: first, entitlement to proceeds from the sale of equipment owned by IFSC when the Receivership sold Fortran Printing, Inc; and second, the maintenance of the IFSC-owned presses.

On July 19, 2006, the Court held a hearing on priority for trade/administrative claimants.

1

Claimant IFSC permitted the sale of its equipment, pursuant to a Rental Agreement with the Receiver, on the condition the proceeds from the sale (Three Hundred Thousand dollars), would be segregated from the general funds from the sale of Fortran. The sale of Fortran was conditioned upon the sale of IFSC equipment and allegedly, Fortran could not have been sold otherwise. The Receiver argues the proceeds are an administrative expense and IFSC may only take its pro rata share.

The Court finds the sale proceeds from the IFSC owned equipment supercede the administrative expenses of the Receivership. The Rental Agreement between IFSC and the Receiver permitting the sale of IFSC's equipment was not a pre-receivership claim and was necessary to effect the sale of Fortran as an ongoing business. The Rental Agreement expressly grants IFSC the right to sell any of the equipment listed in the rental agreement. (Rental Agreement ¶6) Also, it expressly states that upon the sale of the equipment and receipt of IFSC of the sale proceeds therefrom, all Fortran's obligations to IFSC shall be satisfied. (Rental Agreement ¶8).

As the Rental Agreement specifically gave IFSC the right to the sale proceeds from its equipment, the Court finds the Three Hundred Thousand dollars currently segregated shall be paid to IFSC out of the cash assets of the Receivership, ahead of any administrative claims.

On February 13, 2006, the Court held a hearing in open court on whether the Receiver complied with his obligation to maintain the IFSC-owned printing presses pursuant to the terms of the Rental Agreement. The Rental Agreement between IFSC and the Receiver contains a maintenance clause that states, " Receiver shall properly maintain the Equipment and keep it in good working condition and capable of commercial grade work." IFSC contends the Receiver

2

failed to maintain the equipment properly and, as a result, IFSC was required to expend additional funds to upgrade the machines in order to effect their sale. IFSC maintains it is owed approximately Two Hundred Fifty Thousand dollars in lost value on two printing presses owned by IFSC and used by the Receiver during the Receivership. The Receiver contends the equipment was maintained sufficiently to produce commercial grade work as evidenced by the millions of dollars of sales in commercial grade products printed on the machines and delivered to customers. In addition, the Receiver contends he expended approximately One Hundred Thousand dollars in maintaining the equipment during the period of the Receivership.

The Court finds the express language of the Rental Agreement did not require the Receiver to improve, perfect or deliver to IFSC machines in better condition than the condition in which they were received by the Receiver. As there is conflicting evidence on the condition of the presses at the time the Receiver took over Fortran, the Court cannot determine that the Receiver did not maintain the presses in the condition he received them. There is no dispute that the Receiver was able to print commercial grade product on the machines in question during his tenure.[1] The Court does not find that the Receiver failed to maintain the equipment and therefore, the Court finds IFSC is not entitled to additional funds for the maintenance of the printing presses.

On April 18, 2005, this Court ordered the Receiver to pay Forty Thousand dollars to employees of Fortran in unpaid wages and health care claims. As those funds have not been distributed the Court finds Forty Thousand dollars is still due and owing Fortran employees and

---

[1] More importantly, IFSC did not produce any evidence from customers of Fortran complaining about the quality or quantity of orders. The thrust of the Receiver's obligation is the capability of producing commercial grade work.

3

said funds shall be paid from the assets of the Receivership ahead of any administrative claims.

After deducting Three Hundred Thousand dollars owed IFSC and Forty Thousand dollars owed employees of Fortran, the Court calculates the remaining cash assets of the Receivership as Three Hundred Thirteen Thousand Three Hundred Eighteen dollars ($313,318.00).

As the costs and expenses of the Receivership constitute a first charge against the receivership property or funds, the Court finds that the administrative expenses of the Receivership are as follows:

The Receiver's total unpaid fees are Two Hundred Twenty Thousand dollars ($220,000.00). Based on factors in the Code of Professional Conduct, the Court finds the reasonable unpaid attorneys fees for Receiver's counsel total Two Hundred Twenty-Two Thousand Four Hundred Forty Six dollars and Twenty-Four cents ($222.446.24). The Court also finds there is no provision under Ohio law requiring priority be given to the Receiver or his counsel's fees. The Court records reveal the Receiver and Receiver's counsel have already been paid Three Hundred Seventeen Thousand One Hundred Fifty Four dollars ($317,154.00) and Two Hundred Sixty-Five Thousand One Hundred Fifty-Three dollars ($265,153.00) respectively.

Upon the testimony of Qwest Film, Inc. representatives in the July 18, 2005 hearing on challenges to the Receiver's report of priority and expenses, and upon the statements made by the Receiver and Receiver's former counsel in chambers, the Court finds the total amount due and owing Qwest for trade claims is Seventy Nine Thousand Six Hundred Forty Five dollars and Sixty-Nine cents ($79,645.69), exceeding the Forty Five Thousand Three Hundred Ninety dollars and Sixty cents ($45,390.60) listed by the Receiver.

According to the Receiver's uncontested Aged Payables (as provided by the Receiver in

4

Exhibit C to Receiver's April 28, 2005, Motion for Order to Pay Creditors in Priority as their Interests Appear), the remaining administrative claims against the Receivership's assets total Three Hundred Sixty-Three Thousand Eight Hundred Seventeen dollars and Forty-Eight cents ($363,817.48).  Therefore, the administrative expenses of the Receivership total Eight Hundred Forty Thousand Five Hundred Eighteen dollars and Eighty-One cents ($840,518.81).  As the administrative expenses exceed the cash assets, the Court finds there will be no remainder to pay secured and unsecured pre-receivership claims.

The Court finds that all administrative expense claimants, including the Receiver and Receiver's counsel, shall take their *pro rata* share of the remaining cash assets of the Receivership totaling Three Hundred Thirteen Thousand Three Hundred Eighteen dollars ($313,318.00).  Any amounts recovered for Accounts Receivables shall also be partitioned on the same *pro rata* basis upon collection.

Therefore, as this Order addresses all remaining disputes and disposes of the remaining assets of the Receivership, there are no issues remaining for adjudication and the case is removed from the Court's active docket.

IT IS SO ORDERED.

5/31/06
Date

Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

5